NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

METROPOLITAN ALLOYS CORPORATION, Respondent.

No. 78–1114.

United States Court of Appeals, Sixth Circuit.

May 5, 1980.

Elliott Moore, Michael S. Winer, Deputy Associate Gen. Counsel, Susan L. Williams, Lawrence Blatnik, N.L.R.B., Washington, D. C., Bernard Gottfried, Director, Region 7, N.L.R.B., Detroit, Mich., for petitioner.

David Gunsberg, Marvin Breskin, Breskin & Gunsberg, Richard A. Leasia, Detroit, Mich., for respondent.

Before ENGEL, KEITH and MARTIN, Circuit Judges.

ORDER

The National Labor Relations Board found that respondent Metropolitan Alloys Corporation had violated §§ 8(a)(1) and 8(a)(2) of the National Labor Relations Act by creating and dominating a union of its employees.[1] The Board ordered that the union be disestablished and now petitions this court for enforcement of its order.

The Board based its ruling on extensive findings of fact. The record shows the following:

On December 24, 1974, the Company sponsored a pre-Christmas party for its employees in its lunchroom. After employees had finished eating and drinking, Company Vice-President, Murray Spilman initiated a meeting of the employees. Mr. Spilman produced a previously drafted "collective bargaining agreement" containing provisions relating to wages, hours, grievances and other terms and conditions of employment. Vice-President Spilman proceeded to read aloud this "collective bargaining agreement" to the assembled employees. None of the employees had seen the agreement prior to this time. Spilman then announced that "We are getting ready to form a committee that was just like a union."

Following this announcement, Spilman distributed Company-prepared ballots to the employees to select two of their number as committee members. The ballots already contained names of three senior employees. Vice-President Spilman explained that the Company had nominated only senior employees because "it wanted the older guys, the older employees—they would be more capable of dealing with the Company." The employees dutifully marked the ballots and then gave them back to Murray Spilman. The ballots were tallied and Spilman announced that two of the senior employees, Willie Cruz and M. J. Scott had been selected.

As the meeting ended, Murray Spilman asked Cruz and Scott, as committeemen, to sign the contract, which they did. Spilman also obtained the signatures of two other employees at that time. However, no general vote was held on the contract among all of the employees.

After this initial meeting, the "committee" played no role in Company affairs. For a year and a half it held no meetings with management. It did not process any grievances. It did not collect any dues from employees. It had no constitution, by-laws, or other governing structure. Employees hired after the committee's formation were unaware of the existence of either the contract or the committee.

In July of 1976, things changed. Two Teamsters' business representatives, Bob Spencer and Frank Walker, met with a number of Company employees outside of the plant gate. A week later, representative Spencer returned to the plant and talked with other employees telling them that the Teamsters' union wanted to discuss with management the possibility of being recognized as the employees' bargaining agent. Company Superintendent Joel Gordon joined the group a short time later and upon learning that Spencer was a Teamsters' representative, ordered employees to return to work.

Immediately after Spencer left, a management meeting of sorts took place. The President and Vice-President of the Company met with Superintendent Gordon. They resurrected a copy of the contract which had been previously executed by the employee "committee" and the Company. The Company President spoke individually with various employees, warning them that a strike or picket line would violate the existing contract.

On August 9, the Company posted notices on its bulletin board that "the management" had scheduled a union meeting for August 13 to elect a successor to committeeman Willie Crews. Crews had been one of the two committeemen elected at the December 24, 1974 Company-sponsored "union meeting." However, he had left the employ of the Company June of 1975 and no one had been elected to take his place.

---

1. The Board's order is reported at 233 N.L.R.B. 966 (1977).

The meeting of employees was held as scheduled in the early morning on August 13. Management representatives and their lawyer, Mr. Marvin Breskin, attended the election meeting.

Vice-President Spilman opened the meeting and announced that the purpose was to elect a successor committeeman. He also stated that the Company lawyer would conduct the election. Lawyer Breskin held up a ballot and instructed the employees how to mark it. The ballots were handed out by the lawyer and by the Company's Vice-Presidents. Prior to voting, one of the Company foremen, Mr. John Dickson, told the employees that they should elect an employee by the name of Bailey as their representative. Employee Ronald Allen testified that Company lawyer Breskin told him that the election was primarily intended to obtain "a contract that was designed to keep out a union." The ballots were collected and opened by management. The ballots were tallied and the lawyer announced the results, the election of Bailey.

Employee Allen was laid off that same day. He then filed a grievance against the Company regarding his being laid off and handed it to Howard Bailey, the recently elected "committeeman." The Company representative threw it into the garbage. No meeting was held on Allen's grievance but the Company did call two meetings of the committee after the August, 1976 election to discuss other employee complaints.

The Company does not directly dispute the Board's findings. Instead, the Company claims that all it did was accept and cooperate with the "committee" and perform clerical functions at committee elections. In addition, the Company argues that disestablishment is a drastic remedy which robs the employees of their right of being represented.

We do not agree. The record overwhelmingly supports a finding that the union was a company-created sham. Disestablishment was clearly the proper remedy.

The Board's order is enforced.